ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| MIGMARIE REYES RIVERA<br><br>APELANTE<br><br>V.<br><br>THE SHERWIN-WILLIAMS COMPANY, CORPORATIONS A, B, C h/n/c SHERWIN-WILLIAMS<br><br>APELADO | KLAN202500461 | *APELACIÓN* procedente del Tribunal de Primera Instancia Sala de Caguas<br><br>Caso Núm. CG2024CV00300<br><br>Sobre: Despido injustificado, Procedimiento Sumario; Ley 2 del 17 de octubre de 1961, según enmendada |

Panel integrado por su presidenta, la juez Brignoni Mártir, la jueza Alvarez Esnard, y la jueza Prats Palerm

**Brignoni Mártir, Juez Ponente**

### SENTENCIA

En San Juan, Puerto Rico, a 14 de julio de 2025.

Comparece Migmarie Reyes Rivera (señora Reyes Rivera o la Apelante) y solicita la revocación de la *Sentencia Sumaria* emitida y notificada el 12 de mayo de 2025 por el Tribunal de Primera Instancia, sala de Caguas (TPI o foro primario), que desestimó con perjuicio la *Querella* por despido injustificado presentada por la Apelante en contra de su patrono Sherwin Williams Company (Sherwin Williams o la Apelada) al amparo de la Ley Núm. 80 del 30 de mayo de 1976, según enmendada, *Ley Sobre Despido Injustificado* 29 LPRA §185a, et seq., mediante el procedimiento sumario que provee la Ley Núm. 2 del 17 de octubre de 1961 (Ley Núm. 2).

Por los fundamentos que expondremos a continuación confirmamos la *Sentencia Sumaria* apelada.

### I.

El 29 de enero de 2024, la señora Reyes Rivera presentó *Querella* a tenor con el procedimiento sumario para reclamaciones laborales dispuesto en la Ley Núm. 2 del 17 de octubre de 1961 según enmendada en contra de su patrono, Sherwin Williams, en la que alegó haber sido despedida en

violación a las disposiciones de la Ley Número 80 del 30 de mayo de 1976, según enmendada, (29 L.P.R.A. §185a, et seq.).[1] En esencia, la Apelante alegó que trabajó para la Sherwin-Williams, desde el mes de agosto de 2016 hasta el 2 de mayo de 2023, ocupando las posiciones de Asistente de Gerente y Gerente en Entrenamiento y que devengaba un salario de $54,000 anuales, más comisiones por ventas. En síntesis la Apelante alegó que fue despedida de su empleo de forma injustificada el 2 de mayo de 2023, a pesar de que en todo momento mantuvo un desempeño satisfactorio en su empleo y de que no incurrió en faltas o en conducta lesiva que ameritaran su despido. Alegó además que durante su empleo tampoco fue objeto de acciones de disciplina progresiva correctiva y que el salario más alto devengado por un periodo de tres (3) años asciende de $98,000.00 anuales. A esos fines, mediante la Querella presentada la Apelante solicitó el remedio que establece la Ley Núm. 80, *supra*, por concepto de la mesada y la indemnización progresiva consistente en una compensación $50,884.61, más un 15% por concepto de honorarios de abogado, costas y gastos del pleito.

Por su parte, el 2 de febrero de 2024, Sherwin Williams presentó *Contestación a Querella* en la que sostuvo que el despido de la Apelante fue justificado bajo la Ley Núm. 80, y que por tanto esta no era acreedora a la compensación por concepto de la mesada e indemnización progresiva solicitada.[2] Además, en el acápite 9 de su alegación responsiva la Apelada sostuvo expresamente lo siguiente:

> Se alega afirmativamente que el 21 de marzo de 2017, la querellante recibió un Final Writen Warning toda vez que ésta violó las políticas y procedimientos de la Compañía, entiéndase las políticas referentes a *Progressive Misconduct*, *Gross Misconduct,* y *Non-Harassment.* Dicho *Warning* se originó toda vez que la querellante creo un ambiente hostil en su área de trabajo al crear rumores y chismes en el área de trabajo, por lo cual un empleado presentó una queja confidencial. Por esta razón, la querellante tuvo una reunión con el City Manager, Wilson López, donde fue adiestrada y recibió coaching sobre la conducta errónea. Después de la reunión, la querellante accesó el correo electrónico de la tienda y encontró el correo electrónico enviado por el empleado mediante el cual éste sometió su queja confidencial. Esta actuación constituyó un abuso de discreción en su rol como asistente de gerente. Por dichas actuaciones la querellante recibió el Final Writen Warning.

---

[1] *Véase* Entrada Núm. 1 de SUMAC en el caso Núm. CG2024CV00300.
[2] *Véase* Entrada Núm. 7 de SUMAC.

Posteriormente, para finales del mes de febrero y durante el mes de marzo de 2023, la Compañía realizó una investigación interna suscitada por quejas de los empleados a los cuales la querellante supervisaba. Después de la investigación en la cual se entrevistaron a múltiples empleados y compañeros de la querellante, se determinó que las actuaciones de la querellante violaban crasamente las policitas [sic] y procedimientos de la empresa, incluyendo la política anti-represalias. La investigación reflejó que la querellante intentó convencer a un compañero de trabajo que violara la política de la Compañía al solicitarle que no regresara de un viaje de trabajo con el pasaje adquirido por la Compañía, toda vez que la querellante tampoco volvería en el pasaje adquirido, a pesar de haber recibido instrucciones expresas de la Compañía. Por otro lado, la investigación corroboró que la querellante incurrió en represalias cuando cambió el horario con efectividad inmediata de un empleado que había presentado una queja toda vez que la querellante le solicitó que fuese a cerrar la tienda en su día libre. Además, la investigación corroboró, entre otras cosas, que la querellante utilizaba su teléfono celular durante horas laborables para ver series de Netflix, y que la querellante no llegaba a la hora esperada y procedía a enmendar la hora de su llegada para reflejar que llegaba consistente con la expectativa. A raíz de la investigación, que reflejó las múltiples violaciones crasas a las políticas y procedimientos incurridas por la querellante, Sherwin-Williams tomó la decisión de despedir a la querellante.[3]

En esencia, Sherwin Williams alegó que el despido de la Apelante estuvo plenamente justificado bajo la Ley Núm. 80, *supra*, pues se debió a su incumplimiento con las normas, políticas y procedimientos de la empresa, específicamente el *Gross Misconduct* Policy y el *Non Retaliation Policy*, y que además, esta llevó a cabo acciones que se consideraron represalias en contra de compañeros de trabajo subordinados en múltiples ocasiones durante su empleo, falsificó hora de entrada y descuidó sus labores. Finalmente, Sherwin Williams alegó como defensa afirmativa que la Querella dejaba de exponer hechos que justificaran la concesión de un remedio en ley a favor de la señora Reyes Rivera y que por lo tanto debía ser desestimada.

Tras varios incidentes procesales y culminado el descubrimiento de prueba, el 31 de marzo de 2025, Sherwin Williams presentó *Moción de Sentencia Sumaria* ante el foro primario.[4] Allí expuso, que de los documentos en récord y de la prueba testifical obtenida mediante deposición tomada a la Apelante, no existía controversia real y sustancial en cuanto a algún hecho material que impidiera al foro primario dictar sentencia sumaria a favor de Sherwin-Williams.

---

[3] *Id.*
[4] *Véase* Entrada Núm.53 de SUMAC.

A esos fines, la Apelada, tras invocar la jurisprudencia reciente de nuestro Tribunal Supremo en *Delgado Adorno v. Foot Locker Retail*, Inc., 208 DPR 622 (2022) (Sentencia) y la opinión en *Segarra Rivera* v. *International Shipping Agency*, *Inc.*, 208 D.P.R. 964 (2022), solicitó al TPI la desestimación la causa de acción presentada en su contra por la Apelante. En su solicitud de sentencia sumaria Sherwin Williams esbozó una relación de hechos materiales incontrovertidos que a su juicio, justificaban la desestimación sumaria de la Querella presentada por la Apelante y anejó prueba documental acreditativa de los hechos incontrovertidos así como la transcripción de la deposición tomada a la señora Reyes Rivera. Además, Sherwin Williams esgrimió que dichos hechos incontrovertidos establecieron que el despido de la Apelante fue por justa causa, debido a las reiteradas violaciones de esta a las políticas y reglamentos de la empresa y que tenía el fin de velar por el buen y normal funcionamiento de la compañía, por lo que la Apelante no tenía una causa de acción al amparo de la Ley 80, *supra*.

Llegado el término de vencimiento para la presentación de la oposición a la solicitud de sentencia sumaria presentada por la Apelada, la Apelante no presentó la misma ni solicitó extensión de término para así hacerlo. Es por ello que el 22 de abril de 2025, Sherwin Williams presentó *Moción para que se tenga por no opuesta la Moción de Sentencia Sumaria*.[5] Mediante *Resolución Interlocutoria* de 23 de abril de 2025, el foro primario declaró Ha Lugar la solicitud del patrono, y dio por sometida de manera No Opuesta la Moción de Sentencia Sumaria.[6]

Así las cosas, el 12 de mayo de 2025, el foro primario emitió *Sentencia Sumaria* en la declaró HA LUGAR la Moción de Sentencia Sumaria presentada por Sherwin-Williams y desestimó con perjuicio la Querella por despido injustificado presentada por la señora Reyes Rivera en contra de la Apelada. En dicha Sentencia el foro primario estableció los siguientes hechos incontrovertidos:

---

[5] *Véase* Entrada de SUMAC Núm. 65
[6] *Véase* SUMAC 56

**HECHOS QUE NO ESTAN EN CONTROVERSIA**

### Historial de empleo y acciones disciplinarias

1. SW es una compañía de venta de productos de pintura, y herramientas aledañas a lo mismo, que tiene localidades a través de Puerto Rico.

2. Migmarie Reyes Rivera fue contratada por SW el 8 de agosto de 2016 en la posición de Management Training Program. Dicho programa tenía el fin de entrenar a candidatos de empleo y formarlos parte del equipo gerencial del patrono.

3. Reyes, como parte de su contratación, recibió copias y adiestramientos rutinarios de las políticas y procedimientos de la empresa. Entre éstas, Reyes recibió copia del Código de conducta, Política de *Gross Misconduct*, Política de No Represalias, entre otras.

4. El Código de Conducta de SW se mantiene permanentemente en la página web de la empresa, la cual los empleados pueden accesar libremente en cualquier momento.

5. Reyes fue objeto de promociones en su empleo, pasando a la posición de Asistente de Gerente en el año 2016, y luego a ocupar la posición de Gerente de Tienda durante el año 2020.

6. Al igual que Reyes fue objeto de promociones en su empleo, también fue objeto de acciones disciplinarias durante la totalidad del mismo.

*7.* El 21 de marzo de 2017, Reyes fue objeto de un *Final Written Warning* por violación a las políticas de *Progressive Misconduct, Gross Misconduct* y *Non-Harassment.*

8. Este *Final Written Warning* tuvo su génesis en que Reyes actuó de manera no profesional en cuanto a una subordinada, creando un ambiente hostil de trabajo.

9. Incluso, luego de la reunión con su supervisor, Reyes incurrió en represalias al indagar quien fue el empleado subordinado que presentó la queja, en violación a la política de no represalias de la empresa.

10. Desde dicha fecha, la empresa advirtió a Reyes que, de incurrir en más violaciones a las políticas, se le pudiese terminar de su empleo.

11. El 9 de febrero de 2018, Reyes fue objeto de una amonestación verbal pues incurrió nuevamente en violaciones al *Gross Misconduct Policy* por no registrar fielmente sus horas de trabajo, según requerido por la empresa.

12. Posteriormente, Reyes recibió una Amonestación Escrita el 11 de diciembre de 2018, toda vez que incumplió con el deber de gerente de abrir la tienda en dos ocasiones, según coordinado por su supervisor y establecido e el horario de empleo.

### National Sales Meeting

13. En enero de 2023, los gerentes de la empresa, incluyendo a Reyes, fueron invitados al National Sales Meeting (NSM) de Sherwin Williams en Orlando, Florida, del 22 al 25 de enero de 2023.

14. Como parte de su participación en el evento, todos los gerentes de la empresa que fueron invitados tenían el deber de registrarse, y como parte de ese registro, recibieron las políticas y reglamentos del viaje.

15. Las políticas y procedimientos aplicables al NSM establecían que los empleados no podían cambiar los pasajes, debían viajar con la Compañía y no podían tomar vacaciones antes, durante o después del NSM.

16. Igualmente, la empresa fue quien compró los pasajes para todos los gerentes invitados, incluyendo los pasajes de Reyes.

17. El 19 de enero de 2023, Mayra Rodríguez, la supervisora de la querellante, le informó a Reyes que no podía viajar por su cuenta y debía hacerlo con los pasajes de la empresa.

18. Ese mismo día, Rodríguez le solicitó a la querellante que hiciera los cambios pertinentes para cumplir con las reglas del NSM.

19. El 20 de enero de 2023, Mayra Rodríguez y William Maldonado reunieron a los gerentes invitados con el fin de reiterar las reglas del viaje. Reyes participó en la llamada virtual sobre las reglas del evento y del viaje.

20. Después de dicha llamada, Mayra Rodríguez le reiteró a Reyes que debía viajar con los gerentes de la empresa. Reyes informó que había cancelado los pasajes comprados por la Compañía y ya estaba en Florida de vacaciones.

21. Por tanto, Reyes no viajó con el grupo de la Compañía porque había cambiado los pasajes y ya estaba en Florida.

22. El 23 de enero de 2023, durante el NSM, William Maldonado y Mayra Rodríguez informaron a Reyes que debía cambiar su vuelo y regresar a Puerto Rico con la Compañía.

23. Durante el NSM, Reyes intentó persuadir a Jossian Mundo, otro empleado de la querellada, para que cambiara sus pasajes y no regresara a Puerto Rico con la empresa, en violación a las políticas de SW.

24. Reyes no viajó de vuelta con la Compañía, a pesar de recibir instrucciones claras de William Maldonado y Mayra Rodríguez, violando las políticas de la empresa.

### *Investigación Interna y terminación de empleo*

25. El 23 de febrero de 2023, Reyes estaba asignada a la tienda de Rio Piedras, Puerto Rico, de la cual salió para visitar otra localidad de la empresa.

26. Reyes, no obstante, no indicó a su Asistente de Gerente la duración de dicha salida, o si estaría retornando a la tienda.

27. Por razón de Reyes salir de la tienda, el Asistente de Gerente, José Cuevas, tuvo que manejar la tienda de Rio Piedras solo, pues el otro empleado salió a hacer entregas previamente coordinadas de productos de la empresa.

28. Acercándose la hora de cerrar la tienda, y sin que Reyes hubiese retornado, el Asistente de Gerente no podía cerrar la tienda, pues su horario de trabajo no le permitía estar en ese horario.

29. Esto ocasionó que José Cuevas se comunicara con Alexander Rivera, quien tenía posesión de la tercera llave, para que cerrara la tienda. No obstante, Alexander Rivera no estaba disponible toda vez que estaba tomando clases universitarias.

30. Ante la situación, Alexander Rivera indicó que se haría disponible para cerrar la tienda, pero que haría dicho cierre sin uniforme, violando las políticas de la empresa, pues estaba en su día libre.

31. Alexander Rivera se comunicó con Reyes mediante mensaje de texto para informar el cierre de tienda fuera de uniforme. Igualmente, Alexander Rivera se comunicó con Rosana Montañez, Coordinadora de Distrito, pues no recibió respuesta de Reyes.

32. Rosana Montañez se comunicó con Mayra Rodríguez para informar la situación. Acto seguido, Mayra Rodríguez se comunicó con José Cuevas, quien le informó que se encontraba en la tienda solo desde la mañana pues Reyes salió a visitar otra tienda.

33. En dicha llamada, Mayra Rodríguez le informó a José Cuevas que él estaría llevando a cabo el cierre de la tienda, pues Alexander Rivera no puede hacer el mismo.

34. Mayra Rodríguez se comunicó con Reyes para entender la situación que estaba ocurriendo, y de paso le informó que Alexander Rivera no estaría cerrando la tienda.

35. Ante dicha comunicación, la querellante retornó a la tienda, y le ordenó al Asistente de Gerente que ponchara y terminara su turno.

36. A la misma vez, Reyes cambió unilateralmente y con efecto inmediato el horario de los empleados de la tienda de Rio Piedras, en contravención a las políticas de la empresa.

37. El 24 de febrero de 2023, Reyes llevó a cabo un Store Meeting, el cual hizo alusión directa de los eventos ocurridos el día anterior, llamando la atención públicamente a que los empleados debían ponchar la hora de almuerzo, que los empleados debían notificar cambios a horarios de trabajo.

38. A raíz de la situación del 23 y 24 de febrero de 2023, José Cuevas, y Alexander Rivera presentaron quejas ante Mayra Rodríguez y/o el Departamento de Recursos Humanos de SW.

39. A través de dichas quejas, informaron que Reyes había tomado represalias al cambiar el horario de trabajo con efecto inmediato, que ésta utilizaba el teléfono celular para ver Netflix, y que no despachaba mercancía a otras tiendas de la empresa.

40. Como resultado de dichas quejas, la Compañía comenzó una investigación interna liderada por Christian Verde, en la cual se entrevistaron a múltiples empleados de la compañía, incluyendo a la propia querellante.

41. El resultado de la investigación concluyó que la querellante tomó represalias al cambiar el horario de trabajo con efectividad inmediata, después de dicho empleado notificar que estaba libre el día que fue ordenado a cerrar la tienda.

42. Igualmente, la investigación corroboró que Reyes utilizaba su teléfono celular para ver Netflix y otras series durante horas laborables; que Reyes no llegaba a la hora de su turno, mas procedía a cambiar la hora de entrada en el sistema de ponches.

43. La investigación concluyó, además, que Reyes intentó persuadir a un compañero de trabajo durante el National Sales Meeting para que éste violara las políticas de la empresa y no viajara con el pasaje adquirido por la Compañía.

44. Finalmente, la investigación concluyó que Reyes se negó a vender mercancía a ciertos clientes y a otras localidades de Sherwin-Williams.

45. Todas estas actuaciones por parte de Reyes fueron violaciones crasas a las políticas de la empresa.

46. Por tanto, a raíz de la conclusión de la investigación, Reyes fue despedida de su empleo el 2 de mayo de 2023.

A base de las anteriores determinaciones sobre hechos incontrovertidos, el foro primario concluyó que quedó incontrovertido, mediante la evidencia presentada y el propio testimonio bajo juramento de la Apelante en su deposición, que ésta sí fue objeto de múltiples acciones disciplinarias durante su empleo. Específicamente, el foro primario puntualizó que la señora Reyes Rivera fue objeto de amonestaciones verbales, acciones disciplinarias escritas, e incluso, hasta recibió una Amonestación Escrita Final, en donde se le advirtió que incurrir en cualquier otra conducta que violara las normas y políticas de la empresa pudiese culminar en su terminación de empleo. Razonó asimismo el TPI, que según requerido por la Ley Núm. 80, supra, Sherwin Willliams le proveyó a la Apelante copia de todas las políticas y normas de la empresa así como le proveyó también entrenamientos rutinarios a través de su empleo. Finalmente, concluyó el foro primario que luego de recibir las acciones disciplinarias antes descritas, la señora Reyes Rivera fue objeto de una investigación interna después de que dos de sus subordinados presentaran quejas ante el patrono y que en dicha investigación se concluyó que la Apelante violó varias normas de la empresa, incluyendo, pero sin limitarse, al *Gross Misconduct Policy*; *Non-Retaliation Policy; Progressive Misconduct y Non-Harassment*.

Inconforme con el dictamen, el 22 de mayo de 2025, la señora Reyes Rivera presentó el recurso de epígrafe y señala la comisión de los siguientes errores por parte del foro primario:

**Primer Señalamiento de Error**:

Erró el TPI al acoger la Moción de Sentencia Sumaria presentada por la parte querellada-apelada y dictar Sentencia Sumaria existiendo hechos esenciales y sustanciales en controversia, los cuales ameritan la concesión de un juicio en su fondo.

**Segundo Señalamiento de Error**:

Erró el TPI al dictar Sentencia Sumaria acogiendo una solicitud de sentencia sumaria insuficiente, privando la Querellante-Apelante de su día en corte.

En igual fecha, la Apelante presentó *Moción en Solicitud de Término para Presentación del Apéndice a Tenor con la Regla 16(E) (2) del Reglamento del Tribunal de Apelaciones y Otros Extremos.* Mediante *Resolución* de 27 de mayo de 2025, notificada el 4 de junio del corriente año concedimos prórroga de quince días a la Apelante para presentar el Apéndice de la Apelación y le ordenamos acreditar el cumplimiento con lo dispuesto en la Regla 14 (B) del Reglamento del Tribunal de Apelaciones

Por su parte, Sherwing Williams compareció ante nos mediante escrito intitulado *Moción Para Que se Tenga Por No Presentado el Recurso de Apelación y/o Moción de Desestimación del Recurso de la Apelante.* En esencia, la Apelada sostiene que, toda vez que la Apelante ha incumplido con el término concedido para la presentación del Apéndice, procede la desestimación de la Apelación por falta de perfeccionamiento del recurso.

**II.**

**A.**

En cuanto al mecanismo de sentencia sumaria, nuestro ordenamiento jurídico contempla que cualquiera de las partes pueda solicitar que se disponga sumariamente la totalidad o cualquier parte de una reclamación. Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R. 36; *Torres Pagán et al. v. Mun. de Ponce*, 191 DPR 583, 597 (2014). La Regla 36, *supra*, exige que el peticionario de un dictamen sumario establezca su derecho con claridad y demuestre que no existe controversia sustancial sobre algún hecho material;

es decir, suficiente para que sea necesario dirimirlo en un juicio plenario. *SLG Zapata-Rivera v. JF Montalvo*, 189 DPR 414 (2013). Para ello, la parte promovente viene obligada a desglosar los hechos relevantes sobre los cuales aduce que no existe controversia sustancial, en párrafos debidamente numerados y, para cada uno de ellos, especificar la página o párrafo de la declaración jurada u otra prueba admisible en evidencia que lo apoya. *Id.*; Regla 36.3(a)(4), *supra*.

Asimismo, la Regla 36, *supra*, regula la oposición a que se dicte sentencia sumaria, la cual debe citar específicamente los párrafos enumerados que entiende están en controversia y, para cada uno de los que pretende controvertir, detallar la evidencia admisible que sostiene su impugnación con cita a la página o sección pertinente. *Id.*, inciso 3(b)(2). Como se puede apreciar, el oponente debe controvertir la prueba presentada con evidencia sustancial y no puede simplemente descansar en sus alegaciones. *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664 (2018). En la medida en que meras afirmaciones no bastan para derrotar una solicitud de sentencia sumaria, la parte opositora debe presentar contradeclaraciones juradas y contradocumentos que pongan en controversia los hechos presentados. *Id.*; *Ramos Pérez v. Univisión*, 178 DPR 200 (2010).

El oponente a la moción de sentencia sumaria está obligado a establecer que existe una controversia que sea real en cuanto a algún hecho material a la controversia y, en ese sentido, no es cualquier duda la suficiente para derrotar la solicitud. *Meléndez González et al. v. M. Cuebas*, *supra*. En efecto, la duda debe ser tal que permita concluir que existe una controversia real y sustancial sobre los hechos materiales. *Íd.* (*citando a Ramos Pérez v. Univisión, supra*, pág. 214). Además, la parte promovida tiene que puntualizar los hechos propuestos que pretende controvertir, haciendo referencia a la prueba específica que sostiene su posición. *León Torres v. Rivera Lebrón,* 204 DPR 20, 44 (2020). Es decir, "la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa". *Íd.* De esta forma, no puede descansar en meras

aseveraciones o negaciones de sus alegaciones, sino que debe proveer contradeclaraciones juradas y documentos que sustenten los hechos materiales en disputa. *SLG Zapata-Rivera v. JF Montalvo*, supra; *Ramos Pérez v. Univisión*, *supra*, pág. 215; *Cruz Marcano v. Sánchez Tarazona*, 172 DPR 526, 550 (2007).

Según la Regla 36.3(b) de Procedimiento Civil, *supra*, R. 36.3(b), la parte debe presentar la contestación a la moción de sentencia sumaria dentro del término de veinte (20) días de su notificación. Si dicha parte no presenta la contestación dentro de este término, "se entenderá que la moción de sentencia sumaria queda sometida para la consideración del tribunal". Regla 36.3(e) de Procedimiento Civil, *supra*, R. 36.3(e).

Ahora bien, en lo atinente al estándar de revisión aplicable, este Tribunal de Apelaciones utilizará los mismos criterios que el foro de primera instancia al determinar la correspondencia de la sentencia sumaria, aunque limitado a considerar aquellos documentos presentados en el foro primario y obligado a cumplir con la Regla 36.4 de Procedimiento Civil, *supra*. Debemos, por tanto, examinar *de novo* el expediente y verificar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma; luego, revisar si en realidad existen hechos materiales en controversia y, de encontrar que los hechos materiales realmente están incontrovertidos, revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el derecho. *Meléndez González et al. v. M. Cuebas*, 193 DPR 100 (2015).

La sentencia sumaria procede si luego de un adecuado descubrimiento de prueba la parte demandante no cuenta con evidencia suficiente para establecer su causa. *Véase Ramos Pérez*, 178 DPR a la pág. 218. Esta norma descansa en la premisa de que le corresponde a la parte demandante probar su caso. Si la parte demandante no cuenta con prueba luego de terminar el descubrimiento de prueba, no hay razón para ir a juicio. *Véase Id.*

**B.**

Por otro lado, la Ley Núm. 80 del 30 de mayo de 1976, según enmendada, conocida como la *Ley Sobre Despidos Injustificados* (Ley Núm. 80), protege al empleado de actuaciones arbitrarias del patrono y busca desalentar despidos sin justa causa mediante el pago de una indemnización. *SLG Torres-Matundan v. Centro Patología*, 193 DPR 920 (2015). La mesada que provee esta ley busca compensar al empleado por el daño sufrido a consecuencia del despido sin causa justificada. *Vélez Cortés v. Baxter*, 179 DPR 455 (2010). La *Exposición de Motivos* de la Ley Núm. 80, s*upra*, establece que el propósito del citado estatuto es proteger:

> de una forma más efectiva el derecho del obrero puertorriqueño a la tenencia de su empleo mediante la aprobación de una ley que, a la vez otorgue unos remedios más justicieros y consubstanciales con los daños causados por un despido injustificado, desaliente la incidencia de este tipo de despido.

*Exposición de Motivos,* Ley Núm. 80, 29 LPRA sec. 185, *et seq. Véase*, además, *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR, a la pág. 424.

La Ley Núm. 80 aplica a aquellos empleados de comercio, industria o cualquier otro negocio o sitio de empleo que: (1) estén contratados sin tiempo determinado; (2) reciban una remuneración, y (3) sean despedidos de su cargo, sin que haya mediado una justa causa. *Orsini García v. Srio. de Hacienda*, 177 DPR 596, 620-621 (2009).

Debido a su carácter reparador, las disposiciones de la Ley Núm. 80 deben ser interpretadas liberalmente a favor del trabajador. *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR, a la pág. 428. El Tribunal Supremo ha opinado en reiteradas ocasiones que, bajo las disposiciones de la referida Ley Núm. 80 constituye justa causa para el despido aquella que tiene su origen, **no ya en el libre arbitrio del patrono**, sino aquella vinculada a la ordenada marcha y funcionamiento de la empresa en cuestión. *Díaz v. Wyndham Hotel Corp.*, 155 DPR 364, 376-377 (2001).

Sin embargo, nuestro ordenamiento no prohíbe absolutamente el despido de un empleado o empleada. *Rivera Figueroa v. The Fuller Brush Co.*, 180 DPR 894, 905 (2011).

Particularmente, "[s]e entenderá por justa causa para el despido de un empleado aquella que no esté motivada por razones legalmente prohibidas y que no sea producto del mero caprichoso del patrono. Además, se entenderá por justa causa aquellas razones que afecten el buen y normal funcionamiento de un establecimiento...". 29 LPRA sec. 185b.

Nuestro ordenamiento no provee una definición específica sobre qué constituye un despido injustificado, pero la Ley brinda una lista no taxativa de circunstancias en las que se justifica el despido de un empleado por parte del patrono. Entre aquellas que la Ley contempla se encuentra el "cierre total, temporero o parcial de las operaciones del establecimiento" y también "[e]n aquellos casos en que el patrono posea más de una oficina, fabrica, sucursal o planta, el cierre total, temporero o parcial de las operaciones de cualquiera de estos establecimientos donde labora el empleado despedido, constituirá justa causa para el despido a tener con este Artículo." *Id.* sec. 185b(d). Por otro lado, dispone que no se entenderá por justa causa aquel despido que se haga por capricho del patrono o sin razón vinculada con el buen y normal funcionamiento del establecimiento. *Id.* sec. 185b.

El Art. 2 de la Ley Núm. 80, 29 LPRA sec. 185b, detalla las circunstancias que constituyen "justa causa". *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR, a la pág. 424. Dichas circunstancias incluyen motivos fundamentados en la conducta del empleado, así como razones de índole empresarial. *Íd.* A esos efectos, dicho Art. 2 establece que "[s]e entenderá por justa causa para el despido de un empleado aquella que no esté motivada por razones legalmente prohibidas y que no sea producto del mero capricho del patrono".

La Ley 80 dispone que el despido será justificado, y el empleado no tendrá derecho a compensación alguna, todo despido que se fundamente en una de tres (3) razones esbozadas en la propia Ley 80, entiéndase:

a. Que el empleado incurra en un patrón de conducta impropia o desordenada.

b. Que el empleado o incurra en un patrón de desempeño deficiente, ineficiente, insatisfactorio, pobre, tardío o negligente. Esto incluye incumplir con normas y estándares de calidad y seguridad del patrono, baja productividad, falta de

competencia o habilidad para realizar el trabajo a niveles razonables requeridos por el patrono y quejas repetidas de los clientes del patrono.

c.    Violación reiterada por el empleado de las reglas y reglamentos establecidos para el funcionamiento del establecimiento siempre que copia escrita de los mismos se haya suministrado oportunamente al empleado.

29 LPRA §185b.

En una acción por despido injustificado incoada por un empleado, **es el patrono el que tiene el peso de la prueba para establecer que el despido fue justificado**. *Íd.*, *Zapata-Rivera v. J.F. Montalvo*, 189 DPR, a la a la pág. 428. "Para ello tiene que probar, mediante preponderancia de la evidencia, los hechos constitutivos de alguno de los fundamentos eximentes de responsabilidad según consignados en el Art. 2 de la Ley [Núm.] 80". *Íd.* También, debe probar un nexo causal entre las razones aducidas, conforme al mencionado Art. 2, y el despido en controversia. *Íd.*

**III.**

Transcurrido en exceso el término reglamentario para la presentación del Apéndice de la Apelación y la prórroga concedida sin que la Apelante hubiese presentado el mismo, nos vimos precisados a auscultar el expediente del caso de epígrafe ante el foro primario, en la plataforma de SUMAC. Como cuestión de umbral, de allí surge que la Apelante no presentó oposición a la solicitud de sentencia sumaria presentada por Sherwin Williams ante el TPI. Es harto conocido que la parte que se opone a la solicitud de sentencia sumaria debe presentar la contestación a la misma dentro del término de veinte (20) días de su notificación. Regla 36.3(b) de Procedimiento Civil, *supra*. Si dicha parte no presenta la contestación dentro de este término, dispone la Regla 36.3(e) de Procedimiento Civil, *supra*, que "se entenderá que la moción de sentencia sumaria queda sometida para la consideración del tribunal".

De una lectura cuidadosa del expediente disponible en la plataforma de SUMAC, surge además, que Sherwin Willliams radicó su solicitud de sentencia sumaria y que el foro primario concedió término a la Apelante para oponerse sin que ello ocurriera, por lo que la Apelada solicitó al TPI que diera

por sometida su solicitud de sentencia sumaria sin oposición. Ante tales circunstancias, el TPI emitió *Resolución Interlocutoria* de 23 de abril de 2025, en la que declaró Ha Lugar la solicitud del patrono, y dio por sometida sin oposición la *Moción de Sentencia Sumaria* presentada ante dicho foro por la Apelada.

Ante lo anterior, la solicitud de sentencia sumaria cumplió con los requisitos de forma de la Regla 36.3 de Procedimiento Civil, *supra*, y la misma se dio por admitida sin oposición, conforme al inciso (e) de dicha regla, *supra*. En el presente caso, la Sherwin Williams radicó una solicitud de sentencia sumaria con unos hechos propuestos como incontrovertidos apoyados en la prueba documental anejada incluyendo la transcripción de la deposición tomada a la Apelante. Habiendo cumplido con los primeros dos eslabones del análisis apelativo sobre las solicitudes de sentencia sumaria debemos evaluar como tercer paso si en realidad existen hechos materiales en controversia.

En su solicitud de sentencia sumaria Sherwin Williams esbozó una relación de hechos materiales incontrovertidos que a su juicio, justificaban la desestimación sumaria de la Querella presentada por la Apelante y anejó prueba documental acreditativa de los hechos incontrovertidos así como la transcripción de la deposición tomada a la señora Reyes Rivera. El foro primario adoptó los hechos incontrovertidos incluídos por Sherwin Williams en su solicitud de sentencia sumaria.

Luego de examinar y aquilatar la solicitud de sentencia sumaria de la Apelada, y los demás documentos incluidos, ante la ausencia de hechos materiales en controversia, resolvemos que las determinaciones de hechos incontrovertidos realizadas por el Tribunal de Primera Instancia están fundamentadas en la prueba documental anejada a la solicitud de sentencia sumaria, razón por la cual se hacen formar parte de esta sentencia.

De otra parte, **como cuestión de derecho, es preciso destacar que de la relación de hechos incontrovertidos se desprende la presencia de justa causa de Sherwin Williams para el despedido de la Apelante, ya**

**que surge de los hechos incontrovertidos que la señora Reyes Rivera fue objeto de múltiples acciones disciplinarias con anterioridad a su despido**.

Según surge de la deposición tomada el 9 de julio de 2024, la propia Apelante reconoció que tenía conocimiento de las políticas y reglamentos aplicables a su empleo, y que incluso, cogía adiestramientos rutinarios sobre los mismos. A su vez, la señora Reyes Rivera reconoció que todas las políticas estaban en el intranet de la Compañía y disponibles para todos los empleados poder revisarlas en cualquier momento. No obstante, estar clara sobre las políticas de Sherwin-Williams, la Apelante, recibió disciplina progresiva a través de su empleo por reiteradas violaciones a las políticas y reglamentos de la empresa, y dichas violaciones fueron las que culminaron en su terminación. El récord refleja que el 21 de marzo de 2017 la señora Reyes Rivera recibió un *Final Written Warning*. Igualmente, el récord refleja que la Apelante violó las políticas de *Progressive Misconduct, Gross Misconduct, y Non-Harassment* en más de una ocasión, al crear un ambiente hostil por lo cual un empleado presentó una queja confidencial, y luego llevar a cabo actuaciones catalogadas como represalias. De otra parte, la querellante recibió acciones disciplinarias escritas el 9 de febrero de 2018 y el 11 de diciembre de 2018, pues esta no estaba ponchando sus horas de trabajo a pesar de haber sido advertida sobre dicha conducta; y por no abrir la tienda en dos ocasiones, según coordinado previamente con su supervisor, respectivamente. Asimismo, surge de los hechos incontrovertidos que la señora Reyes Rivera violó las políticas e instrucciones de sus supervisores inmediatos al no ir ni regresar con la Compañía de un viaje de trabajo en enero del 2023. Luego, después de unos eventos suscitados el 23 de febrero de 2023 en la tienda de Río Piedras, de donde la señora Reyes Rivera era la Gerente, Sherwin Williams recibió quejas de subordinados de la Apelante lo cual dio paso a una investigación interna sobre dichas alegaciones, en donde se entrevistaron tanto a la señora Reyes Rivera como a múltiples compañeros de empleo de la

Apelante y dicha investigación interna concluyó que la señora Reyes Rivera, incurrió en las siguientes violaciones:(1) estar en la oficina utilizando su celular durante horas laborables viendo series de Netflix, (2) negarse a venderle mercancía a ciertos clientes y/o asistir a tiendas aledañas, y (3) tomar represalias en cuanto a un empleado que se quejó de ella al cambiarle "de la noche a la mañana" su horario de empleo sin justificación alguna. La investigación confirmó, además, las violaciones del viaje, respecto a la querellante no viajar con el grupo de ida y vuelta al NMS y cancelar sus pasajes, en violación a las instrucciones de sus supervisores y las políticas de la empresa.

Como cuestión de derecho, surge de los hechos incontrovertidos que Sherwin Williams cumplió con su deber de notificar las políticas y normas de empleo a la Apelante durante la totalidad de su empleo y que a pesar de ello esta violó las políticas de la empresa, afectando así su buen y normal funcionamiento, por lo que su despido no obedeció a un mero mero capricho o arbitrariedad, de la Apelada. Coincidimos con el foro primario en cuanto a que el despido de la señora Reyes Rivera se debió a sus reiteradas violaciones de las normas y políticas de Sherwin Williams por lo que la Apelada tenía justa causa para despedirla. Con estos antecedentes concluimos que no incidió el foro primario al desestimar la reclamación de despido injustificado presentada por la Apelante al amparo de la Ley 80, supra.

**IV.**

Por los fundamentos anteriormente expuestos, los cuales hacemos formar parte de esta Sentencia, confirmamos la *Sentencia Sumaria* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones